IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| **XAVIER D. ECCLESTON** | * | | |
| | * | | |
| Petitioner | * | | |
| | * | | |
| v. | * | Crim. No. | PJM 11-00567 |
| | * | Civil No. | PJM 17-00729 |
| **UNITED STATES OF AMERICA** | * | | |
| | * | | |
| Respondent | * | | |

**MEMORANDUM OPINION**

Xavier D. Eccleston has filed a Motion to Vacate or Correct Illegal Sentence pursuant to 18 U.S.C. § 2255. ECF No. 522. For the reasons set forth below, the Court **DENIES** the Motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case stems from a drug conspiracy involving the sale of cocaine and crack cocaine in the Kentlands area of Prince George's County, Maryland, between June 2010 and September 2011. ECF No. 522. Phillip Whitehurst, who led the conspiracy (the "Kentland Drug Organization" or "Whitehurst crew"), oversaw a crew of several men who had varying roles in the organization. *Id.* A jury found him guilty of a drug conspiracy involving the sale of cocaine and crack. *Id.*

Eccleston, a friend of Whitehurst, was charged in a Fourth Superseding Indictment with conspiracy to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846 (Count One), use of communications device to facilitate narcotics trafficking in violation of 21 U.S.C. § 843(b) (Counts Eight and Ten), and possession with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts Nine and Eleven). ECF No. 210. A jury found him guilty on all counts. ECF No. 255.

1

Eccleston's trial began on September 11, 2012, before Judge Alexander Williams, Jr., and lasted six days. Various members of the Whitehurst crew testified for the Government. Several co-operators testified that Eccleston was a customer—not a member of the conspiracy. ECF No. 522. However, at trial, one cooperating witness testified that Eccleston had assaulted him and threatened his family unless he agreed to lie to the jury and testify that Eccleston was only a user of cocaine and not a distributor. ECF No. 276. A second co-operator refused to testify because he was too concerned for his safety. *Id.*

Eccleston was represented at the trial level by Criminal Justice Act ("CJA") attorney Anthony Martin, Esquire. About two weeks after his initial appearance, Martin advised Eccleston of what he believed was his possible sentencing range, specifically, that his criminal history appeared to be Category VI so that his custody range under the Sentencing Guidelines based on an Offense Level of 32 would be between 210 and 262 months. ECF No. 522-1. At least two more times before trial, Martin advised Eccleston, in writing, of his opinion that he fell "squarely within the definition of career offender" and that his Guidelines range would be "262 to 327 months."[1] ECF No. 522-2; ECF No. 522-3. Both Eccleston and the Government agree that the characterization of Eccleston as a career offender was incorrect.

In an e-mail to AUSA Lenzner prior to trial, Martin asked the prosecutor how many months of incarceration the Government would seek in a plea agreement. ECF No. 522-7. Martin advised the Government that he "doubt[ed] that [Eccleston] would come in as a co-operator." *Id.* The Government responded that "if [Eccleston] doesn't cooperate then he obviously can't get below the mandatory minimum." *Id.* In that same email, Martin stated that Eccleston would

---

[1] Two offense levels were added to the base offense level because of Eccleston's exposure to an Obstruction of Justice charge for threatening witnesses.

"spend the greater part, if not all of his life in prison." *Id.* In his response, AUSA Lenzner stated his belief that Eccleston's sentence would not be "too outrageous." *Id.*

At trial, one of the co-conspirators testified that the conspiracy trafficked in approximately one kilo of powder per month for the 16 months of the charged conspiracy and approximately three ounces of crack per day. ECF No. 297. The jury also found that Eccleston's personal distribution was limited to between 500 grams to 5 kilograms of powder cocaine and less than 28 grams of crack cocaine. *Id.*

At sentencing, the Government asked the court to hold Eccleston responsible for the entire amount of drugs that the conspiracy trafficked, i.e. 16 kilograms of cocaine and more than 8.4 kilograms of crack cocaine, because that amount was "reasonably foreseeable to the defendant." ECF No. 291 at 8-9. While district judges were not and are not bound by the Government's recommendations regarding drug quantities attributable to a particular defendant, they have had an "obligation" at sentencing "to choose a method for interpreting the evidence that ensures that only drug quantities proven by a preponderance are attributed to a defendant." *United States v. Bell*, 667 F.3d 431, 441 (4th Cir. 2011). Accordingly, while Judge Williams found that Eccleston personally dealt only 5 kilograms or more of cocaine and 280 grams or more of cocaine base, ECF No. 300, ECF No. 328, he determined that Eccleston's criminal activity and relevant conduct involved approximately 16 kilograms of powder cocaine and 28 grams of crack cocaine. This quantity converted to a total of 33,196.4 kilograms of marijuana.[2] ECF No. 297; 18 U.S.C. § 3553.

---

[2] *See* Sentencing Guideline §2D.1.Commentary 8(A)(i): the Drug Equivalency Tables are used to convert the quantity of the controlled substance involved in the offense to its equivalent quantity of marijuana.

Under the Sentencing Guidelines in effect in 2013, this amount set a base level offense of 34.[3] Judge Williams added two levels to Eccleston's Offense Level for Obstruction of Justice for threatening the witnesses and determined Eccleston's criminal history to be a Category III. ECF No. 297. These calculations resulted in a recommended range of 235-293 months of imprisonment. Even so, on January 30, 2013, Judge Williams sentenced Eccleston to 210 months on Count One, and 96 months on Counts Eights and Ten, and 210 months on Counts Nine and Eleven, to be served concurrently. ECF No. 293; ECF No. 301.[4]

On January 31, 2013, Eccleston, through Martin, filed a timely appeal to the Fourth Circuit Court of Appeals, which was denied on July 31, 2015. ECF No. 295; ECF No. 458. Eccleston then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on March 21, 2016. *Eccleston v. United States*, 136 S.Ct. 1476 (2016).

On March 16, 2017, he filed the present Motion to Vacate pursuant to 28 U.S.C. § 2255.

## II.     ANALYSIS

Eccleston alleges that Martin rendered constitutionally ineffective assistance when he mistakenly told him he was a career offender, which he believed would have resulted in a minimum of "about 20-year" imprisonment. ECF No. 522 at 11. As a result of Martin's faulty advice, Eccleston argues, he declined to seek a plea deal and instead proceeded to trial. *Id.* The result, he claims, was that he received a much higher sentence than he would have received if he had pled guilty. *Id.*

---

[3] Under the latest Guidelines, which were updated to modify the sentencing levels for controlled substances in 2016, the same amount sets a base level of 32.

[4] Under the current Guidelines, Eccleston's offense level of 34 would result in a sentence range of 188-235 months. However, the court is not obliged to reduce a defendant's term of imprisonment if the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of his sentencing. Sentencing Guideline §1B1.10 (b)(2)(B). Eccleston's sentence of 210 months of imprisonment was below the minimum guideline range in effect at the time of sentencing.

The parties do not dispute that *Strickland v. Washington,* 466 U.S. 668 (1984) sets the standard as to when a petitioner will prevail on a claim of ineffective assistance of counsel. To do so, the petitioner must establish that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant. *Id.* at 687. To establish deficient performance, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. With respect to prejudice, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional error or errors, the results of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The petitioner bringing an ineffective assistance claim under § 2255 bears the burden of proving his allegation by a preponderance of the evidence. *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967).

A. <u>Deficient Performance</u>

The parties agree that Martin incorrectly calculated Eccleston's criminal history category under the Sentencing Guidelines. Accordingly, the first issue is whether this incorrect advice constituted deficient performance. The Fourth Circuit has ruled that giving legal advice predicated on a plainly false interpretation of federal law constitutes deficient performance. *United States v. Lewis*, 477 Fed.Appx. 79, 82 (2012) ("Had they simply read the applicable federal statutes and correctly applied them to the facts of this case, they would have discovered their error."). In *Lewis*, defense counsel had urged his client to plead guilty based on counsel's misinterpretation of the law that his client qualified as a career offender. *Id.*

In both *Lewis* and the present case, counsel mistakenly told their clients that they qualified for a career offender sentencing enhancement when, in fact, the clients did not. However, Martin's mistake is less consequential compared to counsel's in *Lewis*, where counsel

5

erroneously told his client that he was facing a mandatory life sentence. *Lewis*, 477 Fed.Appx. at 80. As a result, the defendant in *Lewis* forewent trial and pled guilty. *Id.* In contrast, Eccleston argues that had Martin calculated the sentencing correctly, his initial Guidelines range would have been 151 to 188 months[5]—before any potential reductions for Eccleston's acceptance of responsibility or minor role. ECF No. 522.

However, under the 2013 Guidelines, with a base level of 34 (not 32) increased by 2 levels for obstruction justice, the total offense level of 36 and criminal history of category III would result in a recommended custody range of 235-293 months. The 262-327 months that Martin advised would apply based on his assumption that Eccleston was a career offender is not materially different. Under either calculation, Eccleston was very likely facing a sentence of some 240 months (=20 years) whether he pled guilty or went to trial. ECF No. 522-3; Sentencing Table (2013 version). Martin made a mistake, to be sure, but he did not substantially misrepresent Eccelston's exposure to a jail term of around "20 years."

### B. Prejudice

Assuming arguendo that Martin's mistaken advice does amount to deficient performance, the crucial question remains whether Eccleston was prejudiced by the mistake. The Supreme Court has held that where having to stand trial is the prejudice alleged, a defendant must show that, but for the ineffective advice of counsel, there is a reasonable probability that a plea offer would have been made to the defendant, that the defendant would have accepted it, that the prosecution would not have withdrawn it, that the court would have approved it, and that the

---

[5] This calculation provided by Eccleston is based on the current sentencing guidelines, not the 2013 version. Moreover, the calculation does not take into consideration the increase in Eccleston's offense level for Obstruction of Justice for threatening a witness.

conviction or sentence, or both, based on the agreement would have been less severe than the conviction and sentence that in fact were imposed. *Lafler v. Cooper*, 556 U.S. 156 (2012).

*Lafler* has two sub-parts. First, it requires Eccleston to show that he would have been offered an acceptable plea that would be recognized by the court that contained a more favorable sentence than the one actually imposed. Second, if he would have been offered such a plea offer, he has to show that his decision to go to trial was solely due to the mistake of the trial attorney. In other words, he must show that he would have declined to proceed to trial if the attorney had not misadvised him.

1. Would Eccleston Have Been Offered an Acceptable Plea?

A defendant has no right to be offered a plea agreement, nor does he have a right to the judge's acceptance of it. *Missouri v. Frye*, 566 U.S. 134, 148-49 (2012). If a plea bargain has been offered, however, a defendant has the right to effective assistance of counsel in considering whether to accept it. *Lafler*, 556 U.S. at 168. If no plea offer is made, or if a plea deal is accepted by the defendant but rejected by the judge, the issue of ineffective assistance of counsel simply does not arise. *Id.*

Since Eccleston was never offered a plea agreement, under *Lafler* the issue of ineffective assistance would not ordinarily arise. Eccleston does cite a case, however, in which Judge Titus of this Court did not require the actual offer of a plea agreement to find that the petitioner would have been offered an acceptable plea deal. In *Steele v. United States*, the Government had offered, and the court had accepted, plea agreements between the Government and eight of the petitioner's ten co-defendants. *Steele v. United States*, No. CR RWT-12-0014, 2017 WL 2719363 (D. Md. June 22, 2017). In reviewing the § 2255 motion of the petitioner before him,

7

Judge Titus found the Government's argument that it would not have been willing to extend the petitioner a plea offer "questionable at best." *Id.* at *3.

The circumstances of the present case are not dissimilar. Nineteen of Eccleston's co-conspirators were offered a plea, all 19 pleaded guilty, and all 19 guilty pleas were accepted by the court. ECF No. 532. Even Whitehurst, who was deemed the leader of the conspiracy, was offered a plea agreement, which he did not, however, accept. *Id.*

Accordingly, under *Steele*, Eccleston has arguably met his burden of showing that the Government would have offered him a plea agreement and, had Martin presented to Judge Williams, that Judge Williams would have accepted it. That said, as the Court now explains, because Eccleston has failed to show that he would not have proceeded to trial but for Martin's mistake, he cannot prevail on his claim of ineffective assistance.

2. <u>Was Counsel's Error the Only Reason Why Eccleston Proceeded to Trial?</u>

Even if Eccleston has shown that he would have been offered an acceptable plea agreement, the question remains: if Martin had accurately calculated Eccleston's Sentencing Guidelines and sentencing range, would Eccleston have accepted such an agreement and not gone to trial?

The decision whether to plead guilty or go to trial involves assessing the respective consequences of a conviction after trial and a conviction based on a plea. *Lee v. United States*, 137 S.Ct. 1958, 1966 (2017). When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. *Id.* When a defendant claims that advice of counsel was the basis for his decision to either plead guilty or go to trial, the focus must be on the defendant's decision-making. *Id.* at 1966-67.

Eccleston claims that his lack of interest in pleading guilty was due to the miscalculation of his counsel, implying that he would have been willing to plead guilty had counsel not provided the incorrect sentencing ranges. ECF No. 530; ECF No. 532. According to Eccleston, he had no reason to seek a plea since, according to trial counsel's calculations, he was facing a minimum of 262 months regardless of whether he would be convicted by trial or plea. ECF No. 532. In support of this claim, Eccleston cites a letter that he wrote to his counsel in which he states that he is seeking "a way out" and in which he asks about the potential for negotiating a lesser drug quantity. ECF No. 522-4. Eccleston also cites a letter he sent to Martin in which he tells Martin that he is "definitely in a rock and a hard place." ECF No. 522-8.

The Government counters that Eccleston went to trial because he believed the Government did not have sufficient evidence against him. ECF No. 530.

The Court finds the Government's view of the facts far more accurate.

As explained previously, the actual Guideline range Eccleston was facing was substantially as onerous as the one Martin, erroneously, advised him of. Further, Eccleston seemed to like his chances at trial. In correspondence he sent to Martin during the first part of August, Eccleston states: "[t]he majority of the evidence that they have provided has nothing to do with me and besides the wiretaps shows no involvement on my behalf in this conspiracy." ECF No.522-4. In a subsequent letter, dated August 10, 2012, Eccleston tells Martin:

> So if I'm going to trial by myself, what evidence will the government be allowed to introduce? I'm being charged with Conspiracy so they will have to prove there was a Conspiracy that I was a willing and knowing participant. Besides the phone conversations between me and (PW), nothing else is directly connected to me. If nobody comes to testify against me and we get the phones from my arrest suppressed, all they have is me making a few purchases for personal use and no proof of me reselling anything.

ECF No. 522-6.

Both before and after he received these letters, Martin sent his own letters to Eccleston repeatedly warning about the potential consequences of going to trial and offering alternatives. ECF No. 522-2, 522-3. In three separate letters from Martin to Eccleston, Martin states: "You have three options at this point in the proceedings. The first is to continue with your demand for a trial and fight. The second is to cooperate with the Government and negotiate a plea offer. The third is to plea without an agreement." ECF No. 522-1; 522-2; 522-3.

In his second and third letters, dated July 26, 2012 and August 23, 2012, respectively, Martin also states:

> Should you decide to go to trial we will face the wiretapped conversation. In our review of the evidence, I have seen enough to have formed an opinion as to the weight that will be accorded to these by jury. Given the number of contacts; the frequency of the calls, their brevity, the reference to numbers, coupled [with] other evidence will be devastating to the defense. . . . Having said that **I believe that the evidence against you is substantial and a conviction is likely**.

ECF No. 522-2; 522-3. (emphasis in original).

Eccleston offers no evidence to counter Martin's letters. He provides neither correspondence nor testimony that he requested that Martin explore an agreement, even as his co-defendants were pleading out one by one. The evidence Eccleston himself provides clearly indicates that Martin did not think that Eccleston had a good chance at trial and that one of the alternatives he suggested (to cooperate and plead or just plead) would offer a more desirable outcome. In response to these warnings, Eccleston did not express the least desire to plead nor, again, did he ask Martin to explore such options. In short, Eccleston has not shown that he ever seriously considered pleading guilty or that he would have done so, but for counsel's miscalculation of his career offender status.

Eccleston has failed to demonstrate that he was prejudiced by counsel's miscalculation.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Eccleston's Motion to Vacate under 28 U.S.C § 2255.

/s/

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**March 23, 2018**