## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Criminal No. **PJM 11-0567** |
| | * | |
| **XAVIER ECCLESTON,** | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM OPINION

Xavier Eccleston is serving a 188-month prison term after being convicted of four cocaine distribution-related charges in 2013. He now seeks compassionate release, by having his sentence reduced to time-served, currently about 121 months, under 18 U.S.C. § 3582(c)(1)(A)(i). Eccleston claims that the disparity between his sentence and the sentences of his co-defendants constitute extraordinary and compelling circumstances justifying his release, and that release is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). For the following reasons, Eccleston's Motion for Compassionate Release is **GRANTED.**

### I.    BACKGROUND

This case stems from a drug conspiracy involving the sale of cocaine and crack cocaine in Prince George's County, Maryland, between June 2010 and September 2011. Phillip Whitehurst, who led the conspiracy ("Kentland Drug Organization" or "Whitehurst crew"), worked with and oversaw a group of several men who had varying roles in the organization.

On August 8, 2012, Eccleston, a friend of Whitehurst, was charged in a Fourth Superseding Indictment with conspiracy to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846 (Count One), use of communications devices to facilitate narcotics trafficking in violation of 21 U.S.C. § 843(b) (Counts Eight and Ten), and possession with intent to distribute cocaine and crack

1

cocaine in violation of 21 U.S.C. § 841 (Counts Nine and Eleven). ECF No. 210. Eccleston's counsel advised him, incorrectly, that his possible sentencing range would be between 210 and 262 months, and later, that the range would be 262 to 327 months. ECF Nos. 582, 522-1, 522-2, 522-3.

Eccleston's jury trial before Judge Alexander Williams occurred in September 2012. During the trial, one of the cooperating witnesses testified that Eccleston had assaulted him and threatened the cooperator's family unless the cooperating witness agreed to lie to the jury and testify that Eccleston was only a user of cocaine and not a distributor. ECF No. 591. A second cooperator refused to testify because he was too concerned for his safety. *Id.*

Ultimately, the jury found Eccleston guilty on all counts. ECF No. 255. The jury also found 500 grams to 5 kilograms of powder cocaine and less than 28 grams of crack cocaine attributable to Eccleston. *Id.*

At sentencing, Judge Williams found that Eccleston personally dealt only 5 kilograms or more of cocaine and 280 grams or more of cocaine base, ECF No. 300, ECF No. 328, but that Eccleston's criminal activity and relevant conduct involved approximately 16 kilograms of powder cocaine and 28 grams of crack cocaine. *Id.* This quantity converted to a total of 33,196.4 kilograms of marijuana. ECF No. 297; 18 U.S.C. § 3553.

Under the Sentencing Guidelines in effect in 2013, this amount led to a base offense level of 34. ECF No. 297. Judge Williams added two levels to Eccleston's total offense level for Obstruction of Justice for threatening the witnesses and determined Eccleston's criminal history to be a Category III. *Id.* These calculations resulted in a recommended range of 235-293 months of imprisonment. *Id.* Even so, on January 30, 2013, Judge Williams sentenced Eccleston to 210 months on Count One – a 25-month downward variance on the basis that Eccleston's crimes were

non-violent and that he was not a supervisor in the conspiracy – and 96 months on Counts Eights and Ten, and 210 months on Counts Nine and Eleven, all to be served concurrently. ECF No. 300; T. 1/30/13 at 41-42.

On January 31, 2013, Eccleston, through counsel, filed a timely appeal to the Fourth Circuit Court of Appeals, which was denied on July 31, 2015. ECF No. 296. Eccleston then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on March 21, 2016. *Eccleston v. United States*, 136 S.Ct. 1476 (2016).

On March 16, 2017, Eccleston, through counsel, filed a Motion to Vacate pursuant to 28 U.S.C. § 2255, asking the Court to set aside his sentence due to the alleged ineffective assistance of his trial counsel. ECF No. 522. On March 23, 2018, the Court issued a Memorandum Opinion and Order denying Eccleston's Motion to Vacate, on the grounds that, though his counsel committed an error in his sentencing advice, the evidence did not show that the error prejudiced Eccleston; it appeared he would have proceeded to trial even absent the error. ECF Nos. 534, 535. Eccleston filed a notice of appeal to the U.S. Court of Appeals to the Fourth Circuit and a Motion for a Certificate of Appealability on April 26, 2018. ECF Nos. 536, 537. On May 1, 2018, the Fourth Circuit remanded Eccleston's appeal for the limited purpose of determining whether to grant Eccleston a certificate of appealability. ECF No. 540. On May 2, 2018, the Court issued a Memorandum Opinion and Order denying Eccleston's Motion for a Certificate of Appealability. ECF Nos. 541, 542. The Fourth Circuit affirmed the Court's decision on September 21, 2018 and denied Eccleston's petition for rehearing *en banc* on November 20, 2018. ECF Nos. 545, 547.

On December 6, 2018, Eccleston filed a Motion to Reduce Sentence pursuant to Amendment 782 to the U.S. Sentencing Guidelines, ECF No. 549, and on April 19, 2019, the Court, after finding that Eccleston was eligible for a sentence reduction and after considering the

3

factors under 18 U.S.C. § 3553(a), granted the motion and reduced his sentence to 188 months incarceration. ECF No. 555. The Court stated that it was "concerned about certain violent acts in Eccleston's criminal history" but was "persuaded that the relatively minimal sentence reduction requested by Eccleston would not increase the risk to public safety, and the reduced sentence would still satisfy the values of punishment and deterrence required by § 3553(a)." *Id.*

After exhausting his administrative remedies, on June 18, 2020, through counsel, Eccleston filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 564. On July 15, 2020, the Court denied the Motion, after determining that Eccleston's asserted justification – health risks due to the COVID-19 pandemic – did not constitute an extraordinary and compelling reason for relief given that he did not have any health conditions that made him particularly susceptible to COVID-19. ECF No. 569. Eccleston appealed the Denial, and his appeal was Dismissed on October 26, 2020. ECF No. 574.

On August 10, 2021, Eccleston again petitioned this Court for compassionate release and a reduction in sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), this time based on the disparity between his sentence and the sentences of his co-defendants. ECF No. 582. The Government has responded, and Eccleston has replied. The Motion is now ripe for determination.

## II.    DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." See 18 U.S.C. § 3582(c); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). An exception to this rule is the First Step Act, 18 U.C.S. § 3582(c)(1)(A), which allows the court to act on a motion for compassionate release filed by a prisoner. *See United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020). To grant relief, two conditions must be met: (1) the movant must

4

present extraordinary and compelling circumstances; and (2) relief must be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a).[1]  See 18 U.S.C. § 3582(c)(1)(A)(i).

## A.  Extraordinary and Compelling Circumstances

In reviewing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), "courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).  The Court need not defer to the Sentencing Commission's policy statements regarding what constitutes "extraordinary and compelling reasons;" rather, the Court has independent discretion to determine if these criteria are met.  *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *6 (D. Md. May 22, 2020).[2]

Eccleston contends that the disparity between his sentence and those of his co-defendants constitutes an extraordinary and compelling circumstance that justifies a sentence reduction.  The Court agrees.

A sentencing disparity may, in limited circumstances, constitute an extraordinary and compelling reason to reduce a sentence and grant compassionate release.  *See McCo*y, 981 F.3d at 285-286 (upholding reduction of sentences to time served where defendants would have received

[1] As a threshold issue, a petitioner must demonstrate that he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Eccleston filed such a request with the warden, which was denied on July 2, 2021, and 30 days have lapsed. ECF Nos. 582, 582-3. It is uncontested that Eccleston has exhausted his administrative remedies.

[2] The Government's position is that *McCoy* was wrongly decided, and that the circumstances as defined in U.S.S.G. § 1B1.13 limit the instances in which compassionate release may be granted. ECF No. 591. Recognizing that *McCoy* is nonetheless binding precedent and that it has been cited in cases granting compassionate release for sentencing disparities, the Government argues that *McCoy* should be narrowly applied. *Id.* The Court disagrees that *McCoy* sets forth criteria as narrow as the Government suggests for granting compassionate release based on a sentencing disparity. *See, e.g., United States v. Payton*, PJM-06-cr-341, 2021 WL 927631, at *2 (D. Md. March 11, 2021) (citing *McCoy* and finding extraordinary and compelling reasons for relief based on sentencing disparity compared to culpability of conduct; not citing other *McCoy* characteristics such as lack of criminal history or youthfulness of offender).

30 years-lower sentences currently due to statutory changes); *United States v. Payton*, PJM-06-cr-341, 2021 WL 927631, at \*2-3 (D. Md. March 11, 2021) (granting reduction where Defendant's more culpable co-defendant had benefitted from three changes in sentencing regime and been released); *United States v. Edwards*, PJM-05-cr-179, 2021 WL 1575276, at \*2-3 (D. Md. April 22, 2021) (same).

As stated *supra*, Eccleston was originally sentenced to 210 months of incarceration, later reduced to 188 months based on changes in the sentencing regime. ECF No. 556. Of the co-defendants in this case, only one person received a higher sentence: Whitehurst, the leader of the conspiracy, who was sentenced to 294 months. ECF No. 582. In contrast, the other co-defendants all received sentences of 120 months or less and several received sentences under 80 months. At this point, only Eccleston and Whitehurst remain in prison. ECF No. 582.

The Government argues that Eccleston has not shown that the disparity between his sentence and those of his co-defendants is unwarranted, such as to constitute an extraordinary and compelling reason for relief. The Government points to the fact that Eccleston did not plead guilty, and thus did not benefit from a reduction in his guidelines range calculation for early acceptance of responsibility. The Government also argues that Eccleston's history of violent crime, including a 2001 state conviction for first degree assault involving a handgun, and his obstruction of justice in this case justify his sentence. ECF No. 591.

Eccleston acknowledges that some degree of disparity may be justified given that the other defendants who received lower sentences pleaded guilty, while he opted for a jury trial. ECF No. 582. Even so, he asserts, considering their early acceptance of responsibility, and even in view of his own obstruction of justice enhancement, the extent of disparity in this case is not justified. *See e.g., United States v. Sappleton*, PJM-01-284, 2021 WL 598232, at \*1, \*3 (D. Md.

6

Feb. 16, 2021) (finding extraordinary and compelling circumstances based on sentencing disparity even where the conspiracy leader cooperated and pled guilty). Eccleston argues that his sentence does not proportionally reflect the fact that he was "among the least culpable defendants." ECF No. 582. He highlights co-defendants such as John Holt, a "lieutenant" of the conspiracy, who was sentenced to 120 months; Raymond Haynesworth, who had a managerial role and was sentenced to 72 months, later reduced to 70 months; and Jason Scrivner, who received a firearm enhancement and was sentenced to 78 months, later reduced to 70 months. ECF No. 582.

Indeed, it appears that the potential for a sentencing disparity among the many defendants was anticipated at sentencing. As Eccleston points out, Judge Williams expressed concern about whether Eccleston's sentence would be proportionate, stating "The only issue I would ask is with reference to avoiding the disparity of sentencing, where does this defendant fit in the scheme of others?" ECF No. 582, quoting T.1/30/13, 34. In response, the prosecutor stated "we think in terms of people coming down the pike... their sentences .... will be higher than this." *Id.* at 35. This not only did not turn out to be the case; only Whitehurst received a higher sentence than Eccleston. Indeed, in his Motion, Eccleston has attached a letter from retired Judge Williams, in which he stated: "Given Mr. Eccleston's periodic role in the conspiracy, this may be at odds with my stated desire to avoid sentencing disparity in this case." ECF No. 582-1.

Though sentencing is an individualized assessment, courts must also consider the need to avoid unwarranted sentencing disparities among similarly situated defendants. *See Untied States v. Clark*, 434 F.3d 684, 686 (4th Cir. 2006), citing 18 U.S.C. § 3553(a). Where there are unwarranted disparities, this Court in particular has in certain cases reduced sentences, especially where less culpable defendants receive a more severe sentence than their more culpable co-

7

defendants. *See, e.g., Sappleton*, PJM-01-284, 2021 WL 598232, at *1, *3 (finding extraordinary and compelling circumstances based on sentencing disparity between conspiracy leader and less culpable co-defendants). In some cases, a disparity has arisen over time, for instance, where a more culpable co-defendant benefits from changes in the sentencing regime and successfully moves to lower his sentence, such that a less culpable co-defendant ends up with a disproportionately long sentence. *See, e.g., United States v. Payton*, PJM 06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021) (co-defendant's significantly reduced sentence "resulted in a striking disparity where a middling supplier of drugs is punished far more severely than the violent 'ringleader' of a drug trafficking organization that dealt in far greater amounts of drugs" and was an "extraordinary and compelling" reason for relief).

In this case, Eccleston's co-defendants received vastly lower sentences than he did – despite the prosecutor's representations and Judge Williams' concern over sentencing proportionality. The resulting sentencing spread demonstrates that Eccleston's disparate sentence, in context, is unwarranted. *See Payton*, PJM 06-341, 2021 WL 927631, at *2; *Edwards*, PJM-05-cr-179, 2021 WL 1575276, at *3; *United States v. Stockton*, ELH-00-352, 2021 WL 1060347, at *14 (D. Md. Mar. 17, 2021) (considering sentence reduction of defendant's more culpable brother as a factor that supports reducing defendant's sentence to time served).

Moreover, while Eccleston does not make the argument that he would receive a lower sentence today, data from the 2020 Sentencing Commission Sourcebook show that the mean sentence imposed for drug trafficking was 76 months,[3] substantially lower than the 180 months Eccleston received for his drug charges.

---

[3] 2020 Sourcebook, Sentence Imposed by Type of Crime, The United States Sentencing Commission (2020), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/Table15.pdf (accessed Nov. 23, 2021).

Let it be clear: Eccleston committed serious, albeit non-violent, drug offenses. His role in the drug trafficking operation, however, was relatively minor. The disparity between his 188-month sentence and the sentences of his co-defendants is striking, and particularly concerning given the Government's representation at sentencing before Judge Williams that comparatively higher sentences were expected for other more culpable defendants. *See Sappleton,* PJM-01-284, 2021 WL 598232, at *3 (noting defendant was not a leader in drug trafficking ring yet he had served more time than the leader of the ring). *Compare United States v. Morales-Vega*, PJM 08-0051, 2021 WL 4864450 at *5 (Oct. 19, 2021) (no extraordinary and compelling circumstances due to 50+ month sentencing disparity between petitioner and co-defendants where co-defendants benefited from early acceptance and were minor players in drug conspiracy compared to petitioner, who had a manager role and possessed a weapon). In sum, the sentencing disparity in this case is extraordinary and compelling.

**B.  The § 3553(a) Factors**

Because Eccleston has demonstrated that the disparity between his sentence and those of his co-defendants constitutes an extraordinary and compelling reason for release, the Court next examines whether the sentencing factors under 18 U.S.C. § 3553(a) also support early release. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a). The Court concludes that the sentencing factors support release.

The Government argues that a sentence of time-served – at this point, roughly 121 months – would not reflect the seriousness of Eccleston's offenses, not provide just punishment, and not afford adequate deterrence. The Government points to the Court's analysis on April 19, 2019, in which it determined that a sentence of 188 months, rather than 210, would continue to reflect the seriousness of Eccleston's offense. ECF No. 555. Eccleston argues that a sentence of time served – 121 months – is severe enough, pointing persuasively to the fact that lower sentences have been deemed appropriate for similarly situated co-defendants, such as Holt.

Again – Eccleston's offenses were certainly serious and his obstruction of justice is particularly concerning. But on reconsideration the Court is convinced that a 10 year sentence adequately reflects the seriousness Eccleston's actual offense behavior. He played a "periodic" role in a large drug conspiracy in which he was not a leader. *Compare Morales-Vega, supra* at *5. Considering his projected release date of April 25, 2024, he has just over 2 years remaining on what is currently a 15-year sentence. *Compare United States v. Ogundele*, No. 8:15-cr-277-PWG-1, 2021 WL 1541660, at *6 (D. Md. Apr. 20, 2021) (denying release where Defendant had served less than 30% of his sentence). The time he has served is "sufficient but not greater than necessary" to serve punishment and deterrence purposes. 18 U.S.C. § 3553(a).

Another purpose of sentencing, of course, is protection of the public. Eccleston argues that he is no longer a danger to the community, 18 U.S.C. § 3553 (a)(2)(C). ECF No. 582. He has articulated remorse for his actions and, at 44 years old, his risk of recidivism is in all likelihood reduced compared to when he entered prison a decade ago. Moreover, his prison record demonstrates that he no longer appears to present a danger to society; he has had no significant infractions over his decade in prison and has worked his way to the lowest security classification within the lowest custody classification in the Bureau of Prisons, a classification

that permits him to move and work outside the perimeter of the prison camp. ECF No. 582 at 15-16.

The Government contends that Eccleston is still a danger, based on his 2001 state crime and 2012 witness intimidation. Hard to deny; these were serious offenses. But the Court finds Eccleston's present actions, and his consistent non-violent behavior over the past ten years, more persuasive in judging his present danger to the public. The Court believes that Eccleston's risk, or rather, lack of same, weighs in favor of release.

Additionally, Eccleston has undertaken significant rehabilitation efforts, even before the First Step Act incentivized his doing so. Though a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction," *United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021), Eccleston's efforts here add to the other factors supporting release. He has completed more than 90 programs while in custody, including vocational programs. He has a full-time job offer to work as a porter at an apartment complex upon release. ECF No. 582-13. In addition to having arranged outside employment, Eccleston appears to have a solid support network of family and friends ready to help him succeed upon release. *See Sappleton,* PJM-01-284, 2021 WL 598232, at *3 (Determining 3553(a) factors supported release where Defendant had "impressive record of rehabilitation during his incarceration, has shown that he has a strong and extensive support network ready to assist him upon his release, and has demonstrated the added desire to take on responsibility for caring for his aging parents.").

And finally, another factor under § 3553(a) is what has been the primary consideration in this whole process – sentencing disparities. As discussed at length, *supra*, there are clear disparities here. Even back in 2019, the Court remarked that the disparity between Eccleston's

sentence – where only he and Whitehurst remained in prison while nearly all others had been released or were in halfway houses preparing for release – weighed in favor of reducing his sentence. ECF No. 555. These disparities further support the conclusion that the § 3553(a) factors support early release at time served.

**CONCLUSION**

For the foregoing reasons, Eccleston's Motion for Compassionate Release is **GRANTED.** A separate Order will **ISSUE.**

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

November 24, 2021